UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
HUDSON TECHNOLOGIES, INC.; HUDSON   :
TECHNOLOGIES COMPANY, F/K/A ASPEN  :
REFRIGERANTS, INC.                           :
                         Plaintiffs          :  Case No. _____
                                                    :
                     v.                      :
                                                    :
RGAS, LLC,                                         :
                                                    :
                    Defendant.     X
-------------------------------------------------------------

## **COMPLAINT**

For its Complaint against Defendant RGAS, LLC in the above-captioned case, Plaintiffs Hudson Technologies, Inc. and Hudson Technologies Company, f/k/a Aspen Refrigerants, Inc., allege as follows:

## **NATURE OF THE ACTION**

1. This action arises out of RGAS's intentional and bad faith breach of a contract between Defendant RGAS, LLC and Plaintiffs concerning the sale and delivery of certain refrigerants.

## **PARTIES**

2. Plaintiff Hudson Technologies, Inc. ("Hudson") is a corporation organized under and existing pursuant to the laws of the State of New York, with its principal place of business at One Blue Hill Plaza, Pearl River, NY 10965.

3. Plaintiff Hudson Technologies Company, f/k/a Aspen Refrigerants, Inc. ("HTC") is a corporation organized under and existing pursuant to the laws of the State of Delaware, with its principal place of business at One Blue Hill Plaza, Pearl River, NY 10965.

4. Defendant RGAS, LLC ("RGAS") is a limited liability corporation organized under and existing pursuant to the laws of the State of Nevada, with a principal place of business located at 32731 Egypt Lane, Suite 101, Magnolia, TX 77354. The sole registered member of RGAS is Jesse Combs, a citizen of Wyoming.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Hudson is a citizen of New York, HTC is a citizen of Delaware and New York, and RGAS, as a limited liability company, has the citizenship of its members. RGAS's only publicly identified member is a citizen of Wyoming. Thus, complete diversity exists. In addition, Plaintiffs allege that RGAS's breach has caused them to sustain hundreds of thousands of dollars, if not more, in damages. Thus, the amount in controversy threshold of $75,000 is met.

6. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

7. RGAS is subject to personal jurisdiction in this district pursuant to NY Civ. Prac. L §302 because it transacted business within New York, namely by negotiating and entering into a contract with New York based Plaintiffs to sell millions of dollars of refrigerants to them and then receiving payments from the Plaintiffs for the portions of the contract that were performed. In addition, exercising personal jurisdiction over RGAS satisfies the relevant due process standards.

## FACTS
### Introduction

8. Hudson is a seller, reclaimer, and distributor of refrigerants. HTC is an indirect subsidiary of Hudson that also is engaged in the business of selling, reclaiming, and distributing refrigerants.

9. RGAS is similarly engaged in the business of refrigerant distribution.

10. Refrigerants are substances or mixtures of substances used in a heat pump and refrigeration cycle. Due to the toxic nature of these substances and mixtures, the labeling, packaging, and transportation of refrigerants is subject to certain federal regulations, including those of the federal Environmental Protection Agency ("EPA") and federal Department of Transportation ("DOT"), including the Global Harmonized System for Classification and Labeling of Chemicals ("GHS").

11. Different refrigerant mixtures are designated according to a uniform numbering system used by all manufacturers and distributors of refrigerants.

12. For example, Refrigerant R-22 ("R-22") is a mixture used primarily in air conditioning and heat pump systems.

13. As of January 1, 2020, the EPA banned the production of "virgin" (i.e. new) R-22 refrigerant in the United States.

14. Thus, only a finite quantity of recycled or stockpiled R-22 exists in the United States, a quantity that will never be replenished or increased.

**RGAS Agrees to Sell Plaintiffs Its Entire Inventory of Refrigerants**

15. In or around August 2020, RGAS and Plaintiffs began preliminary discussions concerning the sale and purchase of RGAS's complete current inventory of refrigerants.

16. At that time, Jason Crawford, President of RGAS Refrigerants (a wholly owned subsidiary of RGAS, LLC) informed representatives of Plaintiffs that RGAS intended to sell all of its current inventory of refrigerants.

17. As such, on August 7, 2020, via email, Jason Crawford sent Plaintiffs a listing of RGAS's total inventory of refrigerants, soliciting an offer for its entire stockpile.

18. According to this listing, RGAS's inventory of refrigerants included a certain quantity of R-22 held in 30-lb disposable containers ("R2230").

19. After some initial discussions between the parties, on or about September 23, 2020, Plaintiffs submitted a purchase order for certain items in RGAS's inventory, for a total purchase price of $2,793,115.48 ("the Contract"). A true and accurate copy of the Contract is attached hereto as Exhibit A.

20. The Contract included, among other things, the complete stockpile of RGAS's R2230 containers, 5,999 in all, priced at $9.36 per pound and $280.80 per unit, for a purchase price of $1,684,519.20. This represented more than half the total purchase price of the Contract. It also included other R-22 gas held in larger containers.

21. According to the terms and conditions of the Contract, attached thereto as Schedule A, Plaintiffs would conduct an inspection of the product before delivery to verify the condition of cylinders and the weights of the refrigerants.

22. According to the terms and conditions of the Contract, all product would be legally packaged, DOT compliant, and have GHS labeling.

23. According to the terms and conditions of the Contract, Plaintiffs would arrange for transportation of the refrigerants from RGAS's warehouse locations to Plaintiffs' warehouse locations.

24. As is common in the refrigerant industry, RGAS stored its inventory in several warehouse facilities located around the country, including in the following locations:

    a. Murphy Bonded Warehouse, located at 2391 Levy Street, Shreveport, Louisiana ("Louisiana Facility").

  b. A facility owned and operated by Dunavant Distribution Group, LLC, located at 9431 Bay Area Boulevard, Suite 11, Pasadena, Texas ("Texas Facility").

  c. A facility owned and operated by Progressive Logistics, Inc., located at 4400 Stoutfield North Drive, Indianapolis, Indiana ("Indiana Facility").

  d. All South Warehouse, located at 5165 Kennedy Road, Forest Park, Georgia ("Georgia Facility").

25. RGAS shared warehouse space with Plaintiffs at the Indiana Facility and Georgia Facility, thus the product could be easily transferred to Plaintiffs' inventory at those locations after Plaintiffs completed their inspections to confirm that the product was legally packaged, DOT compliant, and included GHS labelling.

26. For the Louisiana Facility and Texas Facility, there was no shared space. Thus, transportation of that product to a different facility would be necessary.

27. RGAS accepted the Contract, including the terms and conditions listed in Schedule A, on or about September 23, 2020, via an email from Jason Crawford. A true and accurate copy of this email is attached hereto as Exhibit B.

### Inspection of RGAS's Inventory Reveals It Is Not Compliant with the Terms of the Contract.

28. On or about September 28, 2020, Plaintiffs completed their inspection of RGAS's product located at the Indiana Facility.

29. Many of the refrigerant containers at issue there were not labelled correctly, as they did not meet DOT or GHS labelling requirements.

30. Via email, on September 28, 2020, Plaintiffs advised RGAS that the containers needed to be properly re-labeled before Plaintiffs could arrange for pick-up and transportation of the containers from the Indiana Facility.

31. Plaintiffs' further inspections of RGAS's product at the Louisiana Facility, Texas Facility, and Georgia Facility revealed that the containers subject to the purchase order at these facilities also were not labelled properly pursuant to DOT and GHS requirements.

32. On October 1, 2020, via email, Plaintiffs informed RGAS that it could not accept delivery of any product that is out of compliance with DOT and GHS requirements.

33. Within a week, RGAS agreed to relabel certain refrigerants at the Indiana Facility, namely refrigerant containers of R404A and R410A. Following this relabeling, a portion of RGAS's inventory at the Indiana Facility was moved to Plaintiffs' inventory at that same facility.

**RGAS Breaches Contract by Failing to Cure Labelling Defect and/or Make Delivery**

34. Throughout the month of October, Plaintiffs continued with their inspections of RGAS's product at the Louisiana Facility, Indiana Facility, Texas Facility, and Georgia Facility (collectively "the Facilities"). Its inspections continued to reveal that the vast majority of RGAS's inventory was improperly labelled.

35. In October and November 2020, the price for R-22 on the open market increased significantly, compared to the purchase price for the refrigerant agreed upon by parties in the Contract. Specifically, the parties had agreed to a price of $9.36 per pound of R-22, but the price on the open market in early November had reached approximately $15.00 per pound.

36. On November 10, 2020, via email, Plaintiffs provided RGAS with a status update on its inspections at the Facilities.

37. This update included a list of products that Plaintiffs could receive immediately, as well as a list of products that Plaintiffs stated that RGAS would need to relabel so that they complied with the requirements of the Contract.

6

38. On November 12, 2020, via email, RGAS informed Plaintiffs that it was "undecided" on whether it wanted to go through with the re-labelling process due to cost.

39. In an attempt to salvage the deal, on the same day, via email, Plaintiffs proposed taking delivery of just the remaining R2230 containers in RGAS's inventory at the Texas Facility, Louisiana Facility, and Georgia Facility, along with other product not subject to DOT or GHS labelling requirements, so long as RGAS was the shipper of record for the inventory.

40. RGAS responded on November 12, 2020, via email, that the deal was "not moving forward at this time" as RGAS was "trying to determine the entire cost of all of the re-labelling."

41. On or about November 17, 2020, RGAS confirmed that it was no longer willing to re-label any of its inventory to meet DOT and GHS requirements, excluding the containers of R404A and R410A at the Indiana Facility.

42. On or about November 30, 2020, RGAS confirmed that the re-labelling of the R404A and R410A containers at its Indiana Facility was complete. Plaintiffs received this inventory and paid for it.

43. However, Plaintiffs did not receive any other product it was entitled to pursuant to the Contract.

## **COUNT ONE (Breach of Contract)**

44. Plaintiffs repeat and re-allege the foregoing allegations as if fully set forth herein.

45. Plaintiffs and RGAS are parties to a valid contract, namely the Contract.

46. To the extent possible, Plaintiffs have performed all obligations under the Contract.

47. RGAS has intentionally breached the contract by, *inter alia*, failing to cure the labelling defects on its product, pursuant to the terms and conditions of the Contract.

48. RGAS has further intentionally breached the contract by, *inter alia*, failing to make proper delivery of its product, pursuant to the terms and conditions of the Contract.

49. RGAS has further intentionally breached the contract by, *inter alia*, breaching the covenant of good faith and fair dealing implied in the Contract. Indeed, the entire economic basis for both sides of the contract was the sale of an entire inventory of refrigerants. RGAS knew or should have known the label status of its inventory before agreeing to sell its entire inventory on terms that required proper labelling. Moreover, by selectively agreeing to cure and relabel the less valuable refrigerants and then breaching the Contract as it related to R-22 (which RGAS knew was what was valuable to Plaintiffs) RGAS engaged in bad faith conduct and unfair conduct designed to sell less marketable refrigerants to Plaintiffs and to keep valuable refrigerants for itself.

50. As a result of RGAS's breach of the Contract, Plaintiffs did not receive the majority of the refrigerants listed in the Contract. That included, for example, at least 200,000 pounds of R-22 at a price of $9.36 per pound. Purchasing replacement R-22 would be significantly more expensive on the open market, and has resulted in significant damages to Plaintiffs.

51. As a result of RGAS's breach of the Contract, Plaintiffs have been further damaged by incurring costs associated with their inspections of RGAS's inventory. Plaintiffs paid for these inspections but did not receive the benefit it bargained for under the Contract. Accordingly, Plaintiffs are also seeking reimbursement of those costs.

52. As a direct and proximate cause of RGAS's breach, Plaintiffs have been damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully requests the following relief:

1. Compensatory damages against RGAS in an amount to be determined at trial;

2. Prejudgment interest of 9%, in accordance with New York state law (*see* CPLR § 5004);

3. Attorneys' fees; and

4. Such other and further relief as justice may require.

Dated: January 13, 2021   By:   */s/John M. Doroghazi*

Wiggin and Dana LLP
John M. Doroghazi
437 Madison Avenue, 35th Floor
New York, NY 10022
Telephone: (212) 551-2600
Facsimile: (203) 782-2889
jdoroghazi@wiggin.com